**REDACTED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/16/2023

DANIEL AND JULIETTE MORTON,

Plaintiffs,

-against-

SALO AIZENBERG, and MAYTAL ASSET
MANAGEMENT, LLC d/b/a,
DOWNTOWN INVESTMENT
ADVISORY.,

Defendants.

21-cv-7782 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Daniel and Juliette Morton (hereinafter referred to as "Plaintiffs") bring this action against Defendants Salo Aizenberg ("Aizenberg") and Maytal Asset Management, LLC d/b/a Downtown Investment Advisory ("DIA") (together, "Defendants") for their alleged misconduct relating to a discretionary investment account managed by Defendants. (Complaint ("Compl."), ECF No. 1.)  Plaintiffs bring claims for breach of fiduciary duty, negligence, and unjust enrichment. Presently before the Court is the Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and the documents referenced therein and are assumed as true for the purposes of this motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiffs Daniel and Juliette Morton, husband and wife, are citizens of Vancouver, British Columbia, Canada. (Compl. at ¶ 8.) Aizenberg is a citizen of the State of New York and the sole member of DIA. (*Id.* at ¶¶ 9–10.)

In 2017, Daniel Morton discovered Aizenberg's investment firm through a web article authored by Aizenberg. (*Id.* at ¶ 11.) Aizenberg's article was published on the financial website "Seeking Alpha." (*Id*.) Aizenberg's article was about a low-risk, fixed-income investment strategy that Aizenberg provides as a service. (*Id.*) Aizenberg's article explained that his strategy was to invest in "Business Development Company-issued bonds, which [Aizenberg] reported as having never defaulted and yield over five percent interest with fixed maturities." (*Id.*) Aizenberg's article reported that "with no risk of default, [the client] could hold the bond to maturity to get principal and interest back." *(Id.)*

Plaintiffs, meanwhile, were interested in finding an advisor to manage their retirement assets "conservatively." (*Id*.) Plaintiffs contacted Aizenberg and inquired about Aizenberg's services. (*Id.*) Aizenberg recommended to Plaintiffs that Plaintiffs "should add margin into their portfolio" to boost yield. (*Id.*)

On November 28, 2017, Plaintiffs and Defendants opened an account and executed the Investment Advisory Contract ("Advisory Contract"). (Declaration of Salo Aizenberg ("Aizenberg Dec.") at Ex. B, ECF No. 21.)  During the course of the parties' contractual relationship, Plaintiffs asked Aizenberg "several times" about the possibility of margin calls. (Compl. at ¶ 12.) Aizenberg told Plaintiffs that Aizenberg's recommended strategy would leave Plaintiffs in a "good position to withstand a massive drawdown" and that the risk of a margin call was "negligible." (*Id*.) Plaintiff accepted Defendants' recommendations and allowed Defendants "to manage [Plaintiffs'] savings on a discretionary basis." (*Id.*)

Three years later, as news of the coronavirus pandemic began to spread in early 2020, Plaintiffs contacted Aizenberg on several occasions about the possibility of margin calls. (*Id.* at ¶¶ 14–17.) Aizenberg told Plaintiffs that the market would recover and that Plaintiffs' fixed income

account "will . . . hold up well during the market correction." (*Id.* at ¶ 14.) Plaintiffs assert Aizenberg did not prepare for the possibility that the margin "would decimate Plaintiffs' accounts during the correction in March." (*Id.* at ¶ 15.)

In correspondence dated March 12, 2020 and March 15, 2020, Aizenberg reassured Plaintiffs that Plaintiffs "still had [a] huge amount of room in [their] margin cushion." (*Id.* at ¶ 16.) In response to Plaintiffs' concerns, Aizenberg told Plaintiffs that he would be "monitoring margin level and reducing holdings where necessary." (*Id.*) Aizenberg reported to Plaintiffs on March 17, 2020 and March 21, 2020 that Plaintiffs were "safe" and ought to leave the margin as is. (*Id.*)

On March 18, 2020 and March 19, 2020, unbeknownst to Plaintiffs, Interactive Brokers ("IB") (DIA's custodian firm) began liquidating their holdings for violations of margin risk limits. (*Id*. at ¶ 17.) On March 21, 2020, Plaintiffs again expressed concerns to Aizenberg regarding their account, and Aizenberg agreed to unwind margin investments. (*Id.*) Plaintiffs lost over $2.5 million, which constitutes the "vast majority of their savings." (*Id.*)

Plaintiffs filed the instant action on September 17, 2021. (*See* ECF No. 1.) On March 14, 2022, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.)

## LEGAL STANDARD

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's

favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A court's review on a Rule 12(b)(6) motion is typically limited to the facts presented in the pleadings. A court, however, may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)). Generally, the harm to a plaintiff when a court considers material extraneous to a complaint on a Rule 12(b)(6) motion "is the lack of notice that the material may be considered." *Chambers*, 282 F.3d at 153. Where the plaintiff has actual notice of all the information in the movant's papers, in particular the existence of a controlling contract, and relies upon that document in framing the complaint, the lack of notice no longer exists.  *See id.* (ruling that lower court did not err in considering contracts extraneous to the complaint where plaintiff possessed these contracts and relied upon their terms and effects in framing the complaint).

## DISCUSSION

### I. Breach of Fiduciary Duty

Plaintiffs allege that Defendants breached their fiduciary duty to Plaintiffs. (Compl. at ¶¶ 18–22.) A claim for breach of fiduciary duty requires: "(1) the existence of a fiduciary duty between the parties; (2) a breach of that duty; (3) the defendant's knowing participation in that

breach; and (4) damages resulting from that breach." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 454 (S.D.N.Y. 2012).

First, Plaintiffs must establish the existence of a fiduciary duty between the parties. Plaintiffs allege that Defendants, as Plaintiffs' investment manager, had a duty to exercise the "skills, prudence, diligence, and judgment of persons within the profession." (Compl. at ¶ 21.) Plaintiffs allege that Defendants' duty included giving "honest and complete information" to Plaintiffs, including an explanation of associated risks when recommending an investment strategy. (*Id.*) Plaintiffs further allege that Defendants were "overconcentrat[ing] Plaintiffs' funds in junk bonds," "fail[ing] to diversify" and "manage" Plaintiffs' investments in accordance with "risk tolerance," "utiliz[ing] excessive margin," and "misrepresent[ing] to Plaintiffs the true nature of the risks involved" in Defendants' investment strategy. (*Id.* at ¶ 2.)

Under New York law, no fiduciary duty arises—in normal circumstances—when there is a contract between the parties. *See, e.g., EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 20 (2005) ("If the parties . . . do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them."). Under special circumstances, however, a fiduciary duty may arise "notwithstanding the existence of a contract—specifically, when there is 'a relationship of higher trust than would arise from the . . . agreement alone.'" *Zorbas v. U.S. Tr. Co.*, 48 F. Supp. 3d 464, 479 (E.D.N.Y. 2014) (quoting *EBC*, 5 N.Y.3d at 20). Managers of discretionary investment accounts, such as Defendants here, "owe their clients a fiduciary duty," but only insofar as that duty is "embodied in their agreement with their clients, to manage the account in a manner that comports with the client's investment objective." *Id.* at 488–89 (citing *United States v. Wolfson*, 642 F.3d 293, 295 (2d Cir. 2011) ("A relationship of trust and confidence does exist between a broker and a customer

with respect to those matters that have been entrusted to the broker.") (internal citations and quotations omitted) (emphasis added)).

As such, this Court turns to the terms of the Advisory Contract, as referenced in the Complaint,[1] to assess the scope of Defendants' fiduciary duty and whether they abided by it. ███

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Here, Plaintiffs do not argue that Defendants "managed the account in a manner incompatible with Plaintiff's chosen investment objective," *see Zorbas*, 48 F. Supp. 3d at 490, here, ██████████████████████████████████████ (Advisory Contract at Ex. A). Plaintiff has made no allegation that the account was managed in a way incompatible with Plaintiffs' chosen investment objectives outlined in Exhibit A of the Contract. Because Defendants followed

---

[1] "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted). Here, Plaintiff expressly incorporates the fee provision of the Advisory Contract into the Complaint. (*See* Compl. at ¶ 29). The Contract is also "integral" to the Complaint because it governs the parties' relationship, including the parties' agreed-upon investment strategy. Accordingly, this Court will rely on the Contract in assessing Plaintiffs' Complaint.

Plaintiffs' chosen investment objectives, in accordance with the terms of the Contract, this Court cannot find Defendants breached their fiduciary duty to Plaintiffs. *Guerrand Hermes v. J.P. Morgan & Co. Inc.*, 769 N.Y.S.2d 240, 242 (N.Y. App. Div. 1st Dep't 2003) (reversing trial court's denial of summary judgment on breach of fiduciary duty claim where manager of discretionary investment account invested entire account in emerging market securities, as directed by the parties' agreed-upon investment strategy); *accord Gordon v. Aizenberg*, No. 7:21 CIV 51 (NSR), 2022 WL 4660499 (S.D.N.Y. Sept. 30, 2022) (dismissing plaintiff's claim for breach of fiduciary duty where contract governed the parties' relationship and plaintiff did not allege special relationship of "trust and confidence" giving rise to fiduciary duty beyond those express terms of the contract). Accordingly, this Court finds there is no breach of fiduciary duty and dismisses Plaintiffs' claim without prejudice.

## II. Negligence

Plaintiff brings a claim of negligence against both Defendants. (Compl. at ¶¶ 23–26.) Under New York law, a claim for negligence requires "(1) the existence of a duty on defendants' part as to plaintiff; (2) a breach of this duty, and (3) injury to the plaintiff as a result thereof." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014). Plaintiff must also establish that the injury was foreseeable. *See Sanchez v. State of New York*, 99 N.Y.2d 247, 252 ("[L]iability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent."). "A breach of contract does not give rise to a claim unless a legal duty independent of the contract itself has been violated under New York law." *See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

As discussed *supra,* Plaintiffs have not sufficiently alleged Defendants owe a duty beyond that embodied in the terms of the Advisory Contract. *Cf. Zorbas*, 48 F. Supp. 3d at 489 ("While Plaintiff is correct that an investment manager acting in a discretionary capacity has a fiduciary duty, such a duty is as set forth in the contract; there is no higher duty that is imposed as a matter of law on this relationship."). Accordingly, this Court dismisses Plaintiffs' claims without prejudice.

### III. Unjust Enrichment

Plaintiffs also bring a claim of unjust enrichment against both Defendants. (Compl. at ¶¶ 27–30.) If there is a valid and enforceable contract between the parties, claims for unjust enrichment are dismissed and recovery is barred. *See Rothberg v Phil's Main Roofing, LLC,* 14-CV-10195 (NSR), 2017 WL 1162904, at *5 (S.D.N.Y. Mar. 24, 2017). "The theory of unjust enrichment . . . [is] a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *See Consol. Edison Co. of New York, Inc. v Cantor*, 18-CV-02267 (NSR), 2019 WL 4142064, at *8 (S.D.N.Y. Aug. 30, 2019) (*citing Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006)). Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract claim." *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). Here, Plaintiffs do not dispute that the Advisory Contract is anything but a valid and enforceable agreement. Moreover, Plaintiff's unjust enrichment claim expressly incorporates a provision of the Advisory Contract. (*See* Compl. at ¶ 29.) As previously determined, the Contract governs the parties' relationship, and Plaintiffs' unjust enrichment claim is barred.  Plaintiffs' claim for unjust enrichment is dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiffs' breach of fiduciary duty and negligence claims are dismissed without prejudice. Plaintiffs' unjust enrichment claim is dismissed with prejudice.

Plaintiffs are granted leave to replead any claims that were dismissed without prejudice. They may file an Amended Complaint consistent with this Opinion on or before April 28, 2023. Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal with prejudice of all claims that this Court has dismissed without prejudice in this Opinion. If Plaintiffs do file an Amended Complaint, Defendants are directed to file an answer or otherwise respond to the Amended Complaint on or before May 19, 2023.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 19.

SO ORDERED:

Dated:   March 16, 2023
         White Plains, New York

_____
        NELSON S. ROMÁN
     United States District Judge

9