UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: __04/29/2024__           │
└─────────────────────────────────────┘
```

DANIEL AND JULIETTE MORTON,

                              Plaintiffs,

        -against-

SALO AIZENBERG, and MAYTAL ASSET
MANAGEMENT, LLC d/b/a,
DOWNTOWN INVESTMENT
ADVISORY.,

                              Defendants.

21-cv-7782 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Daniel and Juliette Morton ("Plaintiffs") bring this action against Defendants Salo Aizenberg ("Aizenberg") and Maytal Asset Management, LLC d/b/a Downtown Investment Advisory ("DIA") (together, "Defendants") for their alleged misconduct relating to a discretionary investment account managed by Defendants. (First Amended Complaint ("FAC"), ECF No. 27.) Plaintiffs bring claims for breach of fiduciary duty and negligence. Presently before the Court is the Defendants' motion (the "Motion") to dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 35.)

For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND

The following facts are derived from the FAC and the documents referenced therein and are assumed as true for the purposes of this motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In 2017, Plaintiffs hired Aizenberg and DIA to manage the vast majority of Plaintiffs' liquid net worth after Morton discovered Aizenberg's investment firm through a web article authored by Aizenberg. (FAC ¶¶ 1, 11.) Aizenberg's article was about a low-risk, fixed-income

1

investment strategy that Aizenberg provides as a service. (*Id.*) Aizenberg's article explained that his strategy was to invest in "Business Development Company-issued bonds, which [Aizenberg] reported as having never defaulted and yield over five percent interest with fixed maturities." (*Id.*) Aizenberg's article reported that "with no risk of default, [the client] could hold the bond to maturity to get principal and interest back." *(Id.)* Plaintiffs, meanwhile, were interested in finding an advisor to manage their retirement assets "conservatively." (*Id.*) Plaintiffs contacted Aizenberg and inquired about Aizenberg's services. (*Id.* ¶12.) Aizenberg recommended to Plaintiffs that Plaintiffs "should add margin into their portfolio" to boost yield. (*Id.*)

On November 28, 2017, Plaintiffs and Defendants opened an account and executed the Investment Advisory Contract ("Advisory Contract").  During the course of the parties' contractual relationship, Plaintiffs asked Aizenberg "several times" about the possibility of margin calls. (*Id.* ¶ 20.) Aizenberg told Plaintiffs that Aizenberg's recommended strategy would leave Plaintiffs in a "good position to withstand a massive drawdown" and that the risk of a margin call was "negligible." (*Id.*) Plaintiff accepted Defendants' recommendations and allowed Defendants "to manage [Plaintiffs'] savings on a discretionary basis." (*Id.*)

Three years later, as news of the coronavirus pandemic began to spread in early 2020, Plaintiffs contacted Aizenberg on several occasions about the possibility of margin calls. (*Id.* at ¶¶ 22–25.) Aizenberg told Plaintiffs that the market would recover and that Plaintiffs' fixed income account "will . . .  hold up well during the market correction." (*Id.* at ¶ 24.) Plaintiffs assert Aizenberg did not prepare for the possibility that the "margin would decimate his clients' accounts during a correction." (*Id.* at ¶ 23.)

In correspondence dated March 12, 2020 and March 15, 2020, Aizenberg reassured Plaintiffs that Plaintiffs "still had [a] huge amount of room in [their] margin cushion." (*Id.* at ¶ 24.)

In response to Plaintiffs' concerns, Aizenberg told Plaintiffs that he would be "monitoring margin level and reducing holdings where necessary." (*Id.*) Aizenberg reported to Plaintiffs on March 17, 2020 and March 21, 2020 that Plaintiffs were "safe" and ought to leave the margin as is. (*Id.*)

On March 18, 2020 and March 19, 2020, unbeknownst to Plaintiffs, Interactive Brokers (DIA's custodian firm) began liquidating their holdings for violations of margin risk limits. (*Id.* at ¶ 25.) On March 21, 2020, Plaintiffs again expressed concerns to Aizenberg regarding their account, and Aizenberg agreed to unwind margin investments. (*Id.)* Plaintiffs lost over $2.5 million, which constitutes the "vast majority of their savings." (*Id.*)

Plaintiffs filed the instant action on September 17, 2021. (*See* ECF No. 1.) On March 14, 2022, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.) On March 16, 2023, the Court granted Defendants' motion to dismiss. (ECF No. 25.) On April 28, 2023, Plaintiffs filed the FAC. (ECF No. 27.) On September 28, 2023, Defendants filed the instant Motion. (ECF No. 35), as well as a memorandum of law ("Defs.' MoL.", ECF No. 36) and reply (ECF No. 39), in support thereof. Plaintiffs filed an opposition to Defs.' MoL. (ECF No. 37.)

## LEGAL STANDARD

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation,"

or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A court's review on a Rule 12(b)(6) motion is typically limited to the facts presented in the pleadings. A court, however, may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)). Generally, the harm to a plaintiff when a court considers material extraneous to a complaint on a Rule 12(b)(6) motion "is the lack of notice that the material may be considered." *Chambers*, 282 F.3d at 153. Where the plaintiff has actual notice of all the information in the movant's papers, in particular the existence of a controlling contract, and relies upon that document in framing the complaint, the lack of notice no longer exists. *See id.* (ruling that lower court did not err in considering contracts extraneous to the complaint where plaintiff possessed these contracts and relied upon their terms and effects in framing the complaint).

## DISCUSSION

### I. Breach of Fiduciary Duty

Plaintiffs allege that Defendants breached their fiduciary duty to Plaintiffs. (FAC at ¶¶ 27–33.) A claim for breach of fiduciary duty requires: "(1) the existence of a fiduciary duty between the parties; (2) a breach of that duty; (3) the defendant's knowing participation in that breach; and (4) damages resulting from that breach." *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 454 (S.D.N.Y. 2012).

4

Plaintiffs must first establish the existence of a fiduciary duty between the parties. Plaintiffs allege that Defendants, as Plaintiffs' investment manager, had a duty to exercise "reasonable care, utmost good faith, fair dealing, integrity, and loyalty in the handling of Plaintiffs' account" by using "the skill, prudence, diligence, and judgment of persons within the profession." (FAC ¶ 31.) Plaintiffs allege that Defendants' duty included giving "honest and complete information" to Plaintiffs, including an explanation of associated risks when recommending an investment strategy. (*Id.*) According to Plaintiff, this included both the risk of total loss on their investment and the level of risk to which their portfolio was exposed under the investment strategy chosen by the parties. (*Id.* ¶ 18.)

Under New York law, no fiduciary duty arises—in normal circumstances—when there is a contract between the parties. *See, e.g., EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 20 (2005) ("If the parties . . . do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them."). Under special circumstances, however, a fiduciary duty may arise "notwithstanding the existence of a contract—specifically, when there is 'a relationship of higher trust than would arise from the . . . agreement alone.'" *Zorbas v. U.S. Tr. Co.*, 48 F. Supp. 3d 464, 479 (E.D.N.Y. 2014) (quoting *EBC*, 5 N.Y.3d at 20). Managers of discretionary investment accounts, such as Defendants here, "owe their clients a fiduciary duty," but *only* insofar as that duty is "embodied in their agreement with their clients, to manage the account in a manner that comports with the client's investment objective." *Id.* at 488–89 (citing *United States v. Wolfson*, 642 F.3d 293, 295 (2d Cir. 2011) ("A relationship of trust and confidence does exist between a broker and a customer with respect to those matters that have been entrusted to the broker.") (internal citations and quotations

omitted)). Accordingly, while "an investment manager acting in a discretionary capacity has a fiduciary duty, such a duty is as set forth in the contract" between the parties. *Id.* at 489.

As such, this Court turns to the terms of the Advisory Contract to assess the scope of Defendants' fiduciary duty and whether they abided by it. In Exhibit A to the Advisory Contract, Plaintiffs acknowledged that Defendants had "been engaged solely to invest the Account per the strategy outlined herein," and Plaintiffs further acknowledged that Defendants had "not been engaged to provide financial planning or general portfolio allocation advice." (ECF No. 27-1, Advisory Contract at Ex. A.) In effect, Defendants were bound to follow the strategy contemplated in Exhibit A of the Contract, which called for Defendants to invest in "high-yielding" instruments, which Plaintiffs acknowledged carried a "higher level of credit risk." (*Id.*) The strategy also called for Defendants to invest nearly 50% of Plaintiffs' account into "margin borrowings." (*Id.*)

The Court does not find that Defendants breached the fiduciary duty, as set out in the Advisory Contract, that they owed Plaintiffs. Instead, Defendants invested precisely as Plaintiffs had directed them to and acted in accordance with the purpose of the investment strategy Plaintiffs themselves chose. Plaintiffs have "made no allegation that the account was managed in a way incompatible with Plaintiffs' chosen investment objective." *See Daniel v. Aizenberg*, No. 21-CV-7782 (NSR), 2023 WL 2541888, at *3 (S.D.N.Y. Mar. 16, 2023) (dismissing breach of fiduciary duty claim where "Defendants followed Plaintiffs' chosen investment objectives, in accordance with the terms of the Contract"). *Cf. Ambac Assur. UK Ltd. v. J.P. Morgan Inv. Mgmt., Inc.*, 88 A.D.3d 1, 8, 928 N.Y.S.2d 253, 258 (2011) (reversing grant of motion to dismiss breach of fiduciary duty claim where plaintiff alleged that the defendant, hired to manage an investment account with the stated objective to "obtain reasonable income while providing a high level of safety of capital" had breached its fiduciary duty when it "continued to invest in securities which

it knew were entirely incompatible with plaintiff's investment objective and stated goal"). Rather, Plaintiffs only dispute the eventual outcome of their investment. *See Vladimir v. Cowperthwait*, 42 A.D.3d 413, 415, 839 N.Y.S.2d 761, 763 (2007) (reversing denial of summary judgment on breach of fiduciary duty claim against manager of discretionary investment account because "[t]he fact that the portfolio did not achieve what plaintiff…believed it would achieve does not raise a triable issues [*sic*] of fact as to whether [the manager] breached its fiduciary duty to plaintiff…or acted in an imprudent manner"). But such an outcome was the result of Defendants managing Plaintiffs' account in accordance with *Plaintiffs'* selected investment strategy. *See Zorbas*, 48 F. Supp. 3d at 489; *see also Guerrand Hermes v. J.P. Morgan & Co. Inc.*, 2 A.D.3d 235, 237, 769 N.Y.S.2d 240, 242 (2003) (affirming summary judgment on breach of fiduciary duty claim against manager of discretionary investment account where "the very purpose of the investment strategy, as set forth in the 'Objective' section, was to invest in emerging markets debt securities"). Plaintiffs cannot now blame Defendants for the results of that choice.

Plaintiffs attempt to sidestep the fact that Defendants acted in accordance with the Advisory Contract by inventing new duties. Specifically, they allege that Defendants breached their fiduciary duty by "intentionally omit[ing] and misrepresent[ing] the risks involved in trading non-investment grade (or junk) bonds." (FAC ¶ 18.) To the extent that Plaintiffs argue that they were misinformed by Defendants regarding the risks of their chosen investment strategy, Plaintiffs agreed at the time of signing the Advisory Contract that they understood "that margin loans expose[ ] investors to unfavorable movements in the value of the account and could possibly lead to the forced sale of assets in the account to cover margin calls." (Advisory Contract at Ex. A.) Plaintiffs also agreed that they understood that "margin loans are charged at a daily interest rate and are thus subject to interest rate risk." (*Id.*) In particular, Exhibit A of the Advisory Contract

explicitly warns that Plaintiffs would be subject to a "higher level of credit risk than investment grade and government bonds," which Plaintiffs acknowledge is "the risk that a company will fail to make timely interest or principal payments and default on its bond." (FAC ¶ 17.) Such risk includes the very risk of total loss "since," as Defendants explain, "the failure of a company to pay on interest or principal (or both) and default on a bond – to which Plaintiffs have invested – is exactly a total loss of that bond investment" (Defs.' MOL at 14). Plaintiffs were thus informed as to the very risks about which they now complain – namely, that their investment strategy would expose them to market volatility and, as a result, may lead to a total loss of investment.

Plaintiffs also attempt to argue that Defendants' fiduciary duty included specifying for Plaintiffs the precise level of risk to which their portfolio was exposed. (FAC ¶ 18). But Plaintiff does not cite, and the Court is unable to find, any caselaw suggesting that an investment manager acting in a discretionary capacity has a fiduciary duty to calculate and disclose the exact level of risk to which an investment could be exposed, nor is any such duty set out in the Advisory Contract. Accordingly, the Court finds that the representations set out in the Advisory Contract adequately disclosed to Plaintiffs the risks of their chosen investment strategy. As a result, there is no breach of fiduciary duty and Plaintiffs' claim is dismissed.

## II. Negligence

Plaintiffs bring a claim of negligence against both Defendants. (FAC ¶¶ 34–38.) Under New York law, a claim for negligence requires "(1) the existence of a duty on defendants' part as to plaintiff; (2) a breach of this duty, and (3) injury to the plaintiff as a result thereof." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.,* 758 F.3d 202, 210 (2d Cir. 2014). Plaintiff must also establish that the injury was foreseeable. *See Sanchez v. State of New York,* 99 N.Y.2d 247,

252 ("[L]iability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent.").

As the Court held in dismissing Plaintiff's prior claim for negligence, Defendants do not owe Plaintiffs a duty outside of that set forth in the Advisory Contract. (See ECF No. 25 at 8.) Here, Plaintiffs have once again failed to allege any standard of care that would apply to Defendants' conduct, outside of that springing from the Advisory Contract. As Plaintiffs have failed to set forth such a separate and distinct duty, the negligence claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Because the Court previously granted Plaintiffs leave to file an amended complaint (*see* ECF No. 25), all claims herein are dismissed with prejudice. The Clerk of Court is kindly directed to terminate the motion at ECF No. 35, to enter judgment in favor of Defendants and close the case.

SO ORDERED:

Dated:   April 29, 2024
         White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge